[Civ. No. 7321. First Appellate District, Division Two.—July 8, 1930.]

ARTHUR McGEORGE, Appellant, v. THE CHARLES NELSON COMPANY (a Corporation), Respondent.

H. W. Hutton for Appellant.

Ford & Johnson and John H. Black for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant to recover damages for personal injuries suffered while he was an employee of the defendant. The defendant answered and a trial was had before the trial court sitting with a jury. The jury returned a verdict in favor of the defendant and from a judgment entered thereon the plaintiff has appealed.

On the sixteenth day of May, 1928, the defendant was the owner and operator of the "Castle Town," a steamer sailing in and out of San Francisco. On that day the plaintiff was and for some time prior thereto had been first assistant engineer employed by the defendant in operating said vessel. While returning to San Francisco a difficulty arose in the operation of the engine. The difficulty consisted of a knocking in the low-pressure cylinder. The engineer and his helper adjusted the nut at the upper end. Thereupon the plaintiff was directed to go below and adjust the nut at the lower end. The plaintiff called the second assistant engineer and they went below to make the adjustment. Although

there is a conflict in the testimony nevertheless there was some evidence to the effect that the chief engineer told the plaintiff to make the adjustment by using a chisel and hammer. In following that method the point of the chisel is put on the upper corners of the nut and thereupon a workman strikes the other end of the chisel with a hammer or sledge. While making the adjustment in this method the second assistant Mr. Ross wielded the hammer. He made about six strokes and each time struck the chisel directly on the head. The seventh stroke did not hit the chisel directly on the head but slipped. In slipping the plaintiff was struck on the cheek. The blow was so severe as to knock him unconscious for a few moments. He fell back against a stanchion in such a way that he incurred a severe bruise on the back. There was evidence to the effect that the nut on which the plaintiff and his helper were working was not fully exposed and that for that reason, it was difficult to turn it. There is manufactured and could have been, but nevertheless there was not, on board any wrench designed to turn such a nut. There was evidence that some time prior to the accident the plaintiff asked that a wrench for turning such a nut be furnished, but it was not furnished. The chisel and hammer being used were good sound tools in every respect.

The plaintiff makes a large number of points claiming reversible error in giving instructions and in refusing to give other instructions. Many were given as to assumed risk. The plaintiff contends that in actions brought by seamen for injuries sustained that the seaman does not assume any risk. The defendant calls to our attention section 33 of the Merchant Marine Act of 1920 (46 U. S. Code Ann., sec. 688), which refers to and adopts portions of the statute regarding railway employees. It then calls to our attention section 4 of the federal Employers' Liability Act (45 U. S. Code Ann., sec. 54), and thereupon the defendant contends that the employee assumes all risks except " . . . in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." We think it is very clear that neither one of these contentions is exact. ■ Prior to the enactment of the statutes above mentioned it had become the settled law that when it was the duty of a servant to obey an order he was entitled to indemnity against the risk and this rule

was especially applicable to seamen. (1 Shearman & Redfield on Negligence, secs. 207h and 211a.) In a well considered case, the court said: " . . . it cannot be that Congress intended to make applicable to seamen the entire doctrine of assumption of risk, as the same has been developed under the law of railway carriage. This necessarily results from the difference in the terms of the two employments. The servant or employee on shore is free to quit at will his employment, if there appear to him dangers in it; this the seaman cannot do." (*Grimberg* v. *Admiral Oriental S. S. Line*, 300 Fed. 619, 621.) On the subject before us it is not claimed that the statutes above mentioned repealed the rules of the maritime law. It could not reasonably be so claimed because it has been directly adjudicated that the statutes referred to had the general effect of extending the rights of seamen who might suffer injury. (*Panama R. Co.* v. *Johnson*, 264 U. S. 375 [68 L. Ed. 748, 44 Sup. Ct. Rep. 391].) Before the enactment of the statutes above mentioned the liability to a seaman was quite well digested in what is said in 35 Cyc., at page 1244. That liability has been broadened. (*Panama R. Co.* v. *Johnson*, 264 U. S. 375, 391 [68 L. Ed. 748, 44 Sup. Ct. Rep. 391].) Under the statute the defendant might be charged if an injury occurred " . . . from the negligence of any of the officers, agents, or employees of such carrier or by reason of any defect or insufficiency, due to its negligence in its . . . appliances . . . or other equipment." (45 U. S. C. A., p. 92, sec. 51.)

There was a conflict in the evidence as to whether the use of a chisel bar and hammer was the customary and usual manner of turning the particular nut these men were working on. If the defendant's vessel was not properly equipped with appliances the plaintiff did not assume the risk in using improper appliances. (*Coast S. S. Co.* v. *Brady*, 8 Fed. (2d) 16, 19; Id., 269 U. S. 578 [70 L. Ed. 421, 46 Sup. Ct. Rep. 103].) In doing what he did, as stated above, there was some evidence that the plaintiff was acting under orders. In obeying orders he did not assume the risk of using an unfit tool. (*The Osceola*, 189 U. S. 158, 175 [47 L. Ed. 760, 23 Sup. Ct. Rep. 483, see, also Rose's U. S. Notes]; *Silveira* v. *Iversen*, 128 Cal. 187, 192 [60 Pac. 687]; *United States Shipping Board Emergency Fleet Corp.* v. *O'Shea*, 55 App. D. C. 300; 5 Fed. (2d) 123, 125; *Masjulis* v. *United States*

*Shipping Board,* 31 Fed. (2d) 284, 285; *The Richelieu,* 27 Fed. (2d) 960, 972.) ▮ The trial court gave several instruc- tions which were in violation of the rules above stated. It will do no good to set all of them forth. Two were as fol- lows: ''You are instructed that the plaintiff assumed all risks necessarily incident to his employment or which were obvious or known to him.'' ''A servant assumes the risk of injury from dangers which are so obvious that he either knew or in the exercise of ordinary care should have known of their existence.'' By these instructions the jury was told that the plaintiff assumed the risk and the defendant was not liable for damages for injury caused the plaintiff if the accident happened (1) because there was a want of proper appliances (2) because the defendant, after notice, had neglected to provide fit and proper wrenches and (3) be- cause in obedience to orders the plaintiff had attempted to turn the nut with unfit and improper tools, when fit and proper tools were not to be had on board of the vessel. Moreover, of the risks so mentioned, obvious risks were spe- cially included. Such instructions were not applicable to an action by a seaman under the facts of the instant case.

▮ The plaintiff complains because the trial court refused to give many different instructions proposed by the plaintiff on other questions involved in the case. In no one instance do we find error. Those requested instructions in every in- stance were not exact statements of law. The plaintiff as- serts that he copied them from certain decisions. It has been stated on many occasions that the text of a decision is not necessarily sound as an instruction to be given to the jury. (*Bundy* v. *Sierra Lbr. Co.,* 149 Cal. 772, 781 [87 Pac. 622].) Regarding the rights of the plaintiff to recover damages because the injury aggravated a pre-existing disease, an in- struction on that subject was before the court and was approved in *Campbell* v. *Los Angeles Traction Co.,* 137 Cal. 565, 567 [70 Pac. 624]. Instead of copying that instruction some language from the text was copied. The instruction so compiled was objectionable in many respects.

For the reasons first mentioned above the judgment is re- versed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 5, 1030, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 4, 1930.