Argued October 9, 1930; affirmed February 24, 1931

# ZIEGLER *v.* ALASKA PORTLAND PACKERS' ASSOCIATION

(296 P. 38)

*W. A. Illidge*, of Portland, for appellant.

*Wm. P. Lord*, of Portland (Lord & Moulton, of Portland, on the brief), for respondent.

ROSSMAN, J. The issues awaiting our disposition can be more readily understood, we believe, after the following undisputed facts have been stated. The defendant was the owner of a large seagoing vessel named the "North King," upon which the plaintiff was employed in the capacity of second cook; the parties are agreed that he bore the status of a seaman.

Upon the occasion when the plaintiff sustained his injuries the North King was bound from Portland to a point in Alaska where the defendant operated a fish cannery. In addition to the cargo carried in the vessel's hold a quantity of lumber and many bulky articles were stowed upon its deck. It also had on board several hundred passengers. The plaintiff, in the performance of his duties, was required to use frequently a passageway on the starboard side of the main deck between the galley, which was in the front end of the vessel, and the mess hall which was near its middle. The port side of the boat between the galley and the mess hall, being blocked with freight, was unavailable. The length of the passageway on the starboard side was about 74 feet and its width from the starboard side of the hatch coaming to the rail was 16 feet. Both the entire width and length of this space was covered with timbers which constituted a part of the deck load, with the exception of several feet on either side of the passageway, where the latter approached the galley and the mess hall. Since the door of the galley was approximately two feet above the level of the deck anyone leaving the galley to proceed into this passageway was required to step over the sill, which was two feet high. Having reached the deck, if he was bound for the mess hall, he would take a few steps upon the deck floor and then step up on the timbers and walk along them for their length, a distance of approximately 60 feet. Having reached their end he would step down upon the deck and after having proceeded a few feet more would enter the door leading into the mess hall. The parties differ as to the character and dimensions of the aforementioned timbers. The plaintiff described them as "railroad ties" approximately 5 feet long and 8 inches by 8 inches in their other two

dimensions. He testified that these ties covered this portion of the deck to the depth of one layer and added that they were not fastened in place. He mentioned occasions when some of them had gotten out of place sufficiently to cause the feet to stumble. The defendant's witnesses described this material variously. All of them believed that several timbers 63 feet long and 12 inches by 12 inches in their other dimensions covered the main portion of the passageway. All, however, agreed that some smaller material about 4 feet long and 6 inches by 6 inches in width and depth was also lodged in the passageway. There was also evidence that some "block wood" was somewhere deposited on this portion of the deck. The officers in charge of the vessel testified that the timbers were securely fastened in place and constituted a safe walk. All of the witnesses agreed that this passageway was much frequented. Evidence offered by the plaintiff that insecurely fastened timber stowed upon a deck, would endanger the safety of those on board was not contradicted.

The plaintiff testified that May 13, when the vessel was upon the high seas and he was carrying a pot of hot stew weighing 30 pounds from the galley to the mess hall for the noon-day meal, he stumbled upon an upturned tie and was thrown to the floor in such a manner that he fell upon his back and sustained the injuries for which he sought relief. He testified that although he did not see any projecting timber prior to his fall that he nevertheless distinctly felt an obstruction with his foot as he was tripped, and explained his failure to see the obstacle by saying that the object in his hands being both heavy and hot he was compelled to carry it in front of him in such a manner that it was difficult to observe the objects immediately

in front. He was of the opinion that the blow of his foot or the force of his fall drove the tie back in place and thus accounted for his failure to see it after his fall. The defendant offered much evidence which had a tendency to show that no accident occurred to the plaintiff in the course of this trip. We are satisfied, however, that the record contains substantial evidence reasonably capable of supporting a finding that (1) the injury befell the plaintiff in the manner described by him, (2) the passageway was covered with ties or material resembling them which, due to lack of secure fastening rendered the passageway dangerous, and (3) that one of these timbers somehow got out of place and tripped the plaintiff.

■ Incidental to its argument that the court erred in failing to direct a verdict for the defendant the latter argues that a variance exists between the allegations of the complaint and the evidence in the following two particulars: (a) the specification of the alleged negligent act, and (b) the nature of plaintiff's alleged injury. The defendant construes the complaint as averring that the timbers, stowed in the passageway, were piled on top of one another in such an insecure manner that they rocked. It believes that the gravamen of the charge depended upon the timbers being loosely piled on top of one another. The proof indicates that for the most part these timbers were placed to a depth of one layer only and the essence of the negligence was the failure to fasten them so that no timber could become dislodged. The defendant's construction of the complaint is not entirely without warrant. However, no motion to make the complaint more certain was filed. Whether this situation submits a fatal variance we shall determine after having stated the defendant's contention in regard to the injury.

The latter is described in the complaint as a "sacroiliac sprain on his back," and the complaint alleges that the effect of the injury has been to "permanently cripple his back so that he has not been able to perform any work." A physician, who testified for the plaintiff, stated that the injury was not a "sacroiliac sprain"; he added, however, "the whole injury is included from the fourth to the sixth lumbar vertebrae * * *. I would say that it still lays at the upper border of the sacroiliac articulation and extends up as far as and involving the fourth lumbar vertebrae." Immediately following his alleged injury the plaintiff was assisted to his bed, and performed no further service on the trip. When the vessel reached Alaska he was taken to a hospital where he remained for about three months. Upon his return to Portland he was again taken to a hospital for three weeks more. The plaintiff testified that since his discharge from the hospital he has been able to perform very little work, Oregon Code 1930, §§ 1-901 to 1-904, provides that no variance is material unless it has misled the adversary and establish the procedure to be followed when "that fact shall be proved to the satisfaction of the court." The defendant at no time during the course of the trial claimed that it was misled by any variance and its first mention of this subject appears in its brief filed in this court. Nothing in the record indicates that the defendant was in any way prejudiced by the slight variances. We find no merit in this contention.

■ It is next contended that the evidence fails to establish that the alleged negligent act was the cause of the injury. The defendant argues that the proof shows that the physical condition, of which complaint is made, may have resulted from either of two causes

for only one of which it was responsible, and that the evidence fails to point out that the alleged negligent act was the more likely cause of the two. The following is a brief synopsis of the evidence upon this point. The proof submitted by the plaintiff, as previously stated, showed that his condition was due to his fall upon the timbers. A physician described his condition as a "laceration or a severe sprain of the ligaments in the lower lumbar region." Evidence offered by the defendant tended to show that the plaintiff was suffering from a general arthritis, resulting from an infection. Some of the defendant's witnesses testified that the plaintiff had admitted to them that he had had a venereal disease, and two physicians, called by the defendant, testified that in their opinion the arthritis could have resulted from this disease. The plaintiff denied that he had made these admissions and also denied that he had ever been subjected to such a disease. Such being the condition of the record cases of the type of *Lippold v. Kidd,* 126 Or. 160 (269 P. 210, 59 A. L. R. 875), and *Spain v. O.-W. R. & N. Co.,* 78 Or. 355 (153 P. 470, Ann. Cas. 1917E, 1104), lose their application and the cases of *Harris v. Hindman,* 130 Or. 15 (278 P. 954), and *Ronner v. Bekin's Moving, Etc., Co.,* 125 Or. 280 (266 P. 627), become applicable. In other words the proximate cause of the injury becomes evident, and is not left doubtful, when the jury has determined which group of lay witnesses spoke the truth. The cause of plaintiff's unfavorable condition was not a matter for speculation, but only one for a comparison of the testimony of two groups of witnesses.

■ The parties are in dispute as to whether this action is controlled by § 33 of the Merchant Marine Act of 1920 (41 Stat. 988, c. 250; U. S. C. Tit. 46, § 688, 46 U.

S. C. A. § 688), which amended § 20 of the Seamen's Act of 1915, 38 Stat. 1164, c. 153, and which provides as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

The proof does not show that the North King was a common carrier. Based upon this circumstance and the fact that railroad employes may maintain their action under the Federal Employers Liability Act only when they are employed by a common carrier the defendant contends that before the plaintiff could avail himself of the benefit of the Merchant Marine Act it was necessary for the complaint to allege and for the proof to show that the vessel upon which he was employed was a common carrier. We have found no case which construes this statute in such a restricted manner, nor do we find any language in any decision which lends support to such an interpretation. In *U. S. v. Lindgren,* 28 Fed. (2d) 725, affirmed in 28 U. S. 38 (50 S. Ct. 207, 74 L. Ed. 686), the plaintiff was given the benefit of the act, although the vessel "had been laid up," for some time prior to the accident "she had

been taken to the dry dock and was undergoing repairs preparatory to a voyage.'' Both in that case and in *Panama Railway Co. v. Johnson,* 264 U. S. 375 (44 S. Ct. 391, 68 L. Ed. 748), wherein the court interpreted the effect of the Merchant Marine Act and upheld its validity, the Federal Supreme Court used broad language indicating that the act is for the benefit of all seamen engaged upon American merchant vessels operating in the navigable waters. Apparently the purpose of § 688, being § 33 of the act of congress of June 5, 1920, is not to restrict the application of the existing act, but merely to render the application of the law more just: *Stoffel v. McCahan Sugar Refining & Molasses Co.,* 35 Fed. (2d) 602. Such being our opinion we believe that the act confers upon seamen the same rights as are possessed by railroad employees employed by common carriers engaged in interstate commerce.

The above disposes of substantially all contentions advanced by the defendant in support of its argument that a directed verdict should have been granted in its favor. It follows that in our opinion this motion was properly denied.

The next seven assignments of error are based upon requested instructions tendered by the defendant, but not given, and the three concluding ones are grounded upon alleged errors in the court's charge. These ten assignments of error challenge the court's interpretation of the complaint as set forth in the instruction, and also the applicability of the Merchant Marine Act, the defense of assumption of risk, and the rule of contributory negligence. Since we have already held that the Merchant Marine Act was applicable to this action we shall discuss this contention no further. Without setting forth a copy of the complaint and

of the instructions for comparison we state our conclusion that the instructions faithfully delineated the substance of the complaint and the charge of negligence therein contained.

■ We come now to the contention that the court's instructions upon the defense of assumption of risk was erroneous. The plaintiff testified that shortly prior to his accident he saw a crew of men repair this passageway by fastening timbers in place. The court instructed the jury: "Plaintiff upon joining the crew of this ship and remaining on board while the ship finished loading, and then departing with this ship for Alaska when it left this port, thereby assumed all the usual and ordinary risks incident to the voyage, not only so far as they were known to him, but also so far as they could have been known to him by the exercise of ordinary care on his part. * * * A man in accepting employment assumes the risks that are usually and ordinarily incident to that kind of work, or such dangers and risks and hazards as are open and obvious to a man of ordinary intelligence and powers of observation. He does not assume any risks that are not known to him or that he could not with the exercise of reasonable diligence and the exercise of his ordinary faculties and powers of observation have discovered." The portion of the instruction which we have omitted was couched in language substantially similar to that employed by Judge (now Mr. Justice) Van Devanter in *U. S. Smelting Co. v. Parry,* 166 Fed. 407 (92 C. C. A. 159), quoted in *O'Brien v. Luckenbach S. S. Co.,* 293 Fed. 170. Since this action is founded upon a charge that the injury occurred upon the high seas due to a defectively stowed cargo we believe that the instruction is not subject to any criticism from the defendant: *Howarth v. U. S. Ship-*

*ping Board,* 24 Fed. (2d) 374; *Zinnel v. U. S. Shipping Board,* 10 Fed. (2d) 47, and *U. S. Shipping Board v. O'Shea,* 5 Fed. (2d) 123. See also *Engfors v. Nelson Steamship Co.,* 131 Or. 108 (280 P. 337), especially the statement therein that under the Federal Employers Act the employee never assumes a risk caused by the master's failure to provide a safe place for working.

■ The instructions, after pointing out to the jury that the plaintiff could not recover unless a negligent act of the defendant was the proximate cause of plaintiff's injury, stated that contributory negligence upon his part would not bar recovery but diminish the damages upon the basis of comparative negligence. Since in actions by seamen contributory negligence does not defeat recovery, if the cause of action is otherwise maintainable, but only divides the indemnity, this instruction was not erroneous: *The Waco,* 3 Fed. (2d) 476, and *Storgard v. France & Canada S. S. Corp.,* 263 Fed. 545.

Without reviewing the instructions further we state our conclusion that we have found no error in them.

■ There remains for disposition the contention that error was committed by the circuit court when it failed to sustain an objection offered by the defendant to a question which elicited the answer: ''He represented an insurance company.'' The witness, who thus answered, was the ship's doctor in the employ of the defendant. Upon direct examination he had described the plaintiff's condition. Upon cross-examination plaintiff's counsel sought the information whether he had kept any memorandum describing the plaintiff's disability, and whether he had sent a report to any one concerning the plaintiff. Since a wide discrepancy existed between the plaintiff's account of his condition and that given by this witness the questions were

relevant and natural. The record does not disclose that plaintiff's counsel had any notice that their inquiries would bring forth this response, and we feel well justified in believing that the question was asked in good faith. Following the answer the defendant moved that the reply be stricken out, and when that motion was denied moved for a discharge of the jury. This motion also was denied. We find no error in any of these rulings: *Fletcher v. Saunders,* 132 Or. 67 (284 P. 276), and the cases there cited.

All other matters argued in the brief have received careful consideration, but we find no error. The judgment of the circuit court will be affirmed.

BEAN, C. J., and KELLY, J., concur.

RAND, J., concurs in result.