[Civ. No. 8205. First Appellate District, Division Two.—August 23, 1932.]

RASMUS P. ANDERSON, Respondent, v. MATSON NAVIGATION COMPANY (a Corporation), Appellant.

Brobeck, Phleger & Harrison for Appellant.

Ford & Johnson for Respondent.

SPENCE, J.—Plaintiff, a seaman employed by the defendant, brought this action under section 33 of the Merchant Marine Act (U. S. Code, tit. 46, sec. 688), to recover damages for personal injuries suffered in the course of his employment. The jury returned a verdict in favor of plaintiff in the sum of $9,000 and from the judgment entered upon the verdict defendant appeals.

The injuries were sustained on December 28, 1929, while plaintiff was working on the 'tween-deck located two decks

below the main deck in hold number four on the S. S. "Ventura." He had been assigned to cleaning up and after filling a bucket with rubbish which he had taken from the scuppers he walked to the edge of the hatch on the 'tween-deck and looked up for the purpose of calling for a line to hoist the bucket. Plaintiff testified that just as he looked up and before he had a chance to call for the line something struck him. The object which struck him was an iron crow-bar which was approximately five feet in length and weighed approximately thirty to thirty-five pounds. This crowbar was being lowered down the hatch by a seaman named Cauling under directions of the second officer. The testimony showed that Cauling had tied two loose half-hitches around the bar and that when he started to lower it the bar slipped through the rope. It is conceded that there was sufficient evidence to sustain the implied finding of defendant's negligence.

■ Appellant's first contention is that the damages are excessive. The settled rule in this connection as expressed in the recent case of *Davis* v. *Renton,* 113 Cal. App. 561, at page 563 [298 Pac. 834], is that a "reviewing court may interfere only in cases where the excess appears as a matter of law, or where the recovery is so grossly disproportionate to any compensation reasonably warranted by the facts as to shock the sense of justice or at first blush raise a presumption that it is the result of passion, prejudice or corruption rather than honest and sober judgment". ■ We have carefully reviewed the evidence relating to the nature and extent of the injuries received by respondent and in our opinion appellant's contention cannot be sustained.

The crowbar struck the left side of respondent's head. The blow laid open the entire left side of respondent's face, fracturing the bones. He was immediately taken to the hospital on December 28, 1929, and remained there as a result of his injuries until July 19, 1930, a period of approximately seven months. Thereafter he continued treatment for his injuries and there was testimony indicating that he would require further treatment for the rest of his life. Four operations were required, one of which involved plastic surgery performed in an effort to at least partially cover the ugly wound inflicted. Four sets of nerves were either lacerated or destroyed, resulting in an anaesthesia and partial paraly-

sis of the left side of the face. Respondent lost control of his left eyelid and was unable to close the left eye. This resulted in constant tearing and because of the inability to close the eye there was inflammation and danger of infection caused by dust or other foreign substances blowing into the eye. It appeared that this condition of the eye and the paralysis of the face were permanent and could not be corrected by further operation. We deem it unnecessary to go into greater detail concerning the evidence of respondent's injuries and the prolonged treatment which he was compelled to undergo. The record discloses that despite said treatment, and any treatment which he may receive in the future, he will permanently have a partially paralyzed face, prominently scarred and the inability to close his left eye, the results of which tend not only to be disfiguring, but also disabling. There was further testimony tending to show that respondent was unable to work because of dizziness experienced when he attempted to bend over or when he attempted to go to any height. Some of respondent's claims in this connection were at least partially discredited by pictures taken by a private detective while respondent was assisting others in building a small shack shortly before the trial. Much is said in the briefs regarding this portion of the testimony, but in our opinion this testimony may be disregarded. Taking into consideration the severity of the injuries, the unquestioned pain and suffering endured by respondent during his long confinement in the hospital, and the permanent effects of said injuries upon respondent's face and eye, as shown by the evidence and briefly outlined above, we do not believe that this court under the settled rule above stated should interfere with the determination of the jury and trial court on this issue of damage.

Appellant next contends that the trial court erred in refusing to give certain requested instructions on contributory negligence. It is conceded by appellant that there was no error in the instructions given on this subject, but it is contended that appellant was entitled to have the jury more specifically instructed thereon, citing *Southern Ry. Co.* v. *Hermans,* 44 Fed. (2d) 366; *Illinois Central R. R. Co.* v. *Nelson,* 203 Fed. 956; *Flack* v. *Delaware, L. & W. R. R. Co.,* 45 Fed. (2d) 683, and other cases. Requested instructions

numbers eight and nine, on the subject of contributory negligence, which the trial court refused, were as follows:

"Instruction No. 8.

"Where an employee has actual knowledge, or, under the circumstances reasonably ought to have knowledge of the possible danger, and such knowledge is of such a character that a reasonably prudent man, under similar circumstances, would exercise due care to avoid the danger, and he is injured by reason of his failure to use such care, he is guilty of contributory negligence."

"Instruction No. 9.

"If a warning has been given to an employee of a possible danger and he has heard it or under the circumstances reasonably should have heard it, and yet fails to heed the warning, and such failure proximately contributes to his injuries, such conduct on the part of the employee constitutes contributory negligence."

Requested instruction No. 8 went no further than to tell the jury that if a prudent man would exercise due care under the circumstances to avoid a possible danger respondent was under such duty and his failure to do so would be contributory negligence. In our opinion this instruction added nothing to the general instructions given by the court on this subject. Requested instruction No. 9 purported to tell the jury as a matter of law that failure to heed a warning constituted contributory negligence. It is subject to criticism in that it ignores the element of opportunity to heed such warning. If a warning comes so late in point of time as to offer no opportunity to act to avoid the danger we know of no rule under which an injured man would be chargeable with negligence as a matter of law merely because of his failure to heed such warning. The proposed instruction relates to any warning preceding injury and in the light of the evidence we believe that the said instruction was properly refused. Respondent testified that he heard no warning. The only warning referred to in the evidence was that given by the second officer. He testified that he sang out, "Look out below", after the crowbar had slipped or as he saw it slipping. The chief mate was the only witness called by appellant who was near the scene of the accident at the time. Although he testified that the

shout of warning came first he stated, "In the order that I heard it, I heard a shout, a bang and then saw something hit Anderson." A reading of the entire testimony on the subject leads to the conclusion that the time element between the so-called warning and the striking was practically negligible. Under these circumstances the instruction in the form proposed would have been misleading to say the least and it was not error to refuse to give it. If it may be said that there was any evidence warranting an implied finding that respondent had an opportunity to avoid the danger by heeding a warning and failed to do so appellant should have proposed a properly qualified instruction on this subject.

Appellant further contends that the trial court erred in the giving and refusing of certain instructions on assumption of risk. Section 33 of the Merchant Marine Act, under which this action is brought, provides that "All statutes of the United States modifying or extending the common-law right or remedy in cases of personal injuries to railway employees shall apply." Turning to the Federal Employers' Liability Act we find the following: "Every common carrier by railroad while engaged in commerce between any of the several states or territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier. . . . " (U. S. Code, tit. 45, sec. 51.) In construing these statutes it has been held that while the fellow-servant rule does not apply in actions brought thereunder, the doctrine of assumption of risk, at least to a restricted degree, is applicable. (*Chesapeake & O. Ry. Co.* v. *Kuhn*, 284 U. S. 44 [76 L. Ed. 157, 52 Sup. Ct. Rep. 45]; *Reed* v. *Director General of Railroads*, 258 U. S. 92 [66 L. Ed. 480, 42 Sup. Ct. Rep. 191]; *Chesapeake & O. Ry. Co.* v. *De Atley*, 241 U. S. 310 [60 L. Ed. 1016, 36 Sup. Ct. Rep. 564]; *Southern Ry. Co.* v. *Hermans*, 44 Fed. (2d) 366; *States Steamship Co.* v. *Berglann*, 41 Fed. (2d) 456; *Grimberg* v. *Admiral Oriental Steamship Line*, 300 Fed. 619; *McGeorge* v. *Charles Nelson Co.*, 107 Cal. App. 148 [290 Pac. 75].)

The instructions given at the request of respondent informed the jury that respondent "did not assume the risk of

any negligence on the part of any of the officers or employees engaged in said work" and that even if respondent "knew and assumed the risks of an inherently dangerous method of doing the work assigned to him he did not assume the increased risk attributable not to the method but to the negligence of this defendant in pursuing it if any". On the other hand, the refused instructions requested by appellant were to the effect that respondent assumed the ordinary risks of his employment "and when obvious or fully known and appreciated he assumed the extraordinary risks and those due to negligence of his employer and fellow employees. . . . "

A review of the decisions under the above-mentioned statutes shows that the authorities are not entirely harmonious in defining the proper application of the doctrine of assumption of risk. The instructions proposed by respondent and given by the court find support in the rule as stated in 56 Corpus Juris, 1100, section 684, where it is said: "The doctrine of assumption of risk is inapplicable where the damage was proximately caused by the negligence of a fellow servant. The seaman does not assume the risk of injury from the negligence of an officer, or from other member of the crew." In *Reed* v. *Director General of Railroads*, 258 U. S. 92, it is said at page 95 [66 L. Ed. 480, 42 Sup. Ct. Rep. 191, 192] : "In actions under the Federal Act the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant which the injured party could not have foreseen or expected is the sole, direct and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad while engaging in interstate commerce shall be liable to the personal representative of any employee killed while employed therein when death results from the negligence of any of the officers, agents or employees of such carriers." In *Chesapeake & Ohio R. R. Co.* v. *Proffitt,* 241 U. S. 462 [60 L. Ed. 1102, 36 Sup. Ct. Rep. 620, 622], the court, after saying that the employee assumes the ordinary risks "so far as these are not attributable to the negligence of the employer or of those of whose conduct the employer is responsible" goes on to say, "Even if plaintiff knew and assumed the risks of an inherently dangerous method of doing the work,

he did not assume the increased risk attributable not to the method but to negligence in pursuing it."

■ Conceding that the doctrine of assumption of risk may apply in cases where an inherently dangerous method is ordinarily employed in doing certain work, still it would do violence to the terms of the statute to hold that an employee assumes the risk of particular acts of negligence of his fellow-employees in pursuing the method employed. In the present case, even assuming that respondent may be said to have assumed the ordinary risks attendant on lowering heavy objects into the hold on a line, it cannot be said that he assumed the increased risks resulting from the negligence of his fellow-employees in pursuing that method. ■ Turning to the evidence we find that the seaman Cauling, who was in the act of lowering the crowbar when it slipped, was not called as a witness, although present in court. The only evidence relating to the cause of the slipping was given by the second officer. He testified that Cauling put two loose half-hitches around the bar and that it slipped just as Cauling started to lower it. The only rational conclusion to be drawn from the evidence is that the bar slipped by reason of the negligent manner in which Cauling tied the half-hitches and that the accident happened as the result of this particular act of negligence on the part of Cauling in pursuing the method rather than as the result of one of the ordinary risks inherent in the method employed. Under these circumstances the doctrine of assumption of risk was not applicable and there was no error in the giving and refusing of the instructions to which reference has been made.

■ Appellant also complains of error in the refusal of a proposed instruction relating to damages. Respondent prayed for general and also special damages, alleging, among other things, that prior to the accident he received the sum of $65 per month "together with his keep and maintenance". Appellant alleged in his answer and showed by the evidence that since the accident it had paid to respondent several hundred dollars for his keep and maintenance. It proposed the following instruction, which was refused: "Defendant alleges in its answer that it has paid to and for the plaintiff for his keep and maintenance since the time of the accident certain sums of money. I instruct you that if you find the defendant has paid to or for

plaintiff for his keep and maintenance since the accident any sums of money you should deduct such sums from any damages suffered by plaintiff for inability to engage in employment in case you find plaintiff entitled to any such damage at all.'' The only authority cited by appellant is *Graeber* v. *Derwin,* 43 Cal. 495. The authority cited is not in point. In the case of a seaman the compensation for his services is made up of two elements, the actual wage and his keep or maintenance. Employees other than seamen are ordinarily compensated for their services solely by wages. In the case cited the court merely held that it was error to allow an injured person (not a seaman) damages for loss of wages and also compensation for his living expenses during the same period. ▆ Under the maritime law, however, the ship owner is under obligation to furnish maintenance to a sick or disabled seaman regardless of whether he is liable for damages for negligence. (*The Osceola,* 189 U. S. 159 [47 L. Ed. 760, 23 Sup. Ct. Rep. 483]; *The Bouker,* 241 Fed. 831.) This right to maintenance arises out of the contract of employment while the right to damages for injuries arises in tort. (*Pacific Steamship Co.* v. *Peterson,* 278 U. S. 130 [73 L. Ed. 220, 49 Sup. Ct. Rep. 75].) The latter right existed prior to the Merchant Marine Act only in the case of unseaworthiness. Appellant concedes that since the enactment of the Merchant Marine Act the right to maintenance continues even though the injured seaman may also recover damages for injuries resulting from negligence, but appellant argues that respondent ''is not entitled to recover the same damages twice''. This may be granted, but we find nothing to indicate that by reason of the instructions given, or by reason of the refusal of this proposed instruction, such double recovery resulted. The only reasonable construction to place upon the words ''loss of wages if any'' as used in the instructions given is that it had reference to the loss of the actual wages which had been received by respondent while working and not to his maintenance received in addition thereto as part of his compensation. If appellant believed that there was any doubt regarding the meaning thereby conveyed to the jury a proper instruction could have been proposed to dispel such doubt. The proposed instruction, however, indicated that respondent was

not entitled to maintenance in addition to the items of damage mentioned in the instructions given, but that all sums paid for maintenance should be deducted from the sum to be awarded. There was no error in refusing this proposed instruction.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 22, 1932.