[S. F. No. 15384. In Bank.—September 3, 1935.]

ALFRED SPENCER, Respondent, v. BEADLE STEAMSHIP COMPANY, LTD. (a Corporation), et al., Defendants; GEORGE S. BEADLE, Appellant.

Sawyer & Cluff and Webster F. Street for Appellant.

A. Don Duncan for Respondent.

SHENK, J.—The plaintiff brought this action under the provisions of section 33 of the Merchant Marine Act of 1920 (46 U. S. C. A., sec. 688), called the Jones Act, against Beadle Steamship Company, Ltd., and George S. Beadle, for damages for personal injuries sustained when he fell through an open hold of the steamer "Fort Bragg." A judgment of nonsuit was entered as to the steamship company. The jury returned a verdict for the plaintiff in the sum of $10,000 which, on denying the motion for a new trial, the court reduced to $7,000. From the judgment entered on the verdict the defendant, George S. Beadle, has appealed.

The main contention on the appeal is that the court erred prejudicially in refusing to instruct the jury on the question of assumption of risk. The "Fort Bragg" was a single-ended vessel engaged in the coastwise trade. The plaintiff was employed as a seaman on the vessel. On the particular voyage in question timbers 52 feet long were piled lengthwise

of the deck, on the port and starboard side, to a height of about ten feet above the deck. Between this lumber and the hatch coamings there was a space about forty inches wide, and about forty-five feet in length, the forty-five feet being the distance between two large tanks fore and aft of the hatch. At Coos Bay a quantity of 1x12's and 2x3's was loaded into the spaces so left on the port and starboard sides of the hatch and between the two tanks, up to the top of the long timbers. No space was left between the load and the hatch coamings.

When the ship docked at Vallejo to take off cargo the plaintiff was ordered to assist in unloading the lumber piled between the large timbers and tanks and the hatch coamings. While this lumber was being unloaded the hatch covers were off. The plaintiff and another were preparing a load of lumber to be swung ashore, about six or eight feet above the hatch coamings. While the plaintiff was attempting to place a cargo sling around a slingload of lumber, he fell into the hold, a distance of about eighteen feet, and was seriously injured.

The plaintiff alleged the defendants' negligence in the manner of loading the lumber between the long timbers and the hatch coamings, and the negligent failure of the defendants in furnishing to the plaintiff a reasonably safe place to work. The defendants pleaded affirmatively assumption of risk and contributory negligence.

The trial court refused to give the instructions requested by the defendant on the question of assumption of risk. The question is whether under the facts this defense was available to the defendant and the failure to instruct the jury thereon constituted prejudicial error.

It is contended that the plaintiff, an experienced seaman, assumed any risk incident to the work of unloading under the circumstances involved. The Jones Act incorporates by reference the provisions of the Federal Employers Liability Act (45 U. S. C. A., sec. 54). By the provisions of the latter act the defense of assumption of risk, if applicable under the facts, is a bar to recovery. The appellant contends that if that defense is not available in the case of a seaman suing under the Jones Act, nevertheless the plaintiff is not a seaman but is rather in the class of longshoremen and stevedores who live on shore and are not subject to the

discipline of the ship and may quit at will. This argument is predicated on the showing that the vessel was engaged only in the coastwise trade, and was never any great distance from a port, and that the plaintiff was not under any necessity of subjecting himself to unsafe employment, but could quit at will. The cases relied upon by the defendant, however, do not indicate that the mere engagement in coastwise trade alone is sufficient to create the exception. In such cases as *Skolar* v. *Lehigh Valley R. Co.*, 60 Fed. (2d) 893; *The Scandinavia*, 156 Fed. 403 (see, also, *Scheffler* v. *Moran Towing & Trans. Co.*, 68 Fed. (2d) 11), the plaintiff lived on shore and otherwise was not strictly a seaman subject to orders and discipline as such. We think the rule of those cases was not intended to be extended to the case of a seaman simply because he was employed on a vessel which touched port frequently.

We may assume that the plaintiff, as is stated in some cases (*Chamberlin & Co.* v. *Rylander*, 68 Fed. (2d) 362; *Scheffler* v. *Moran Towing & Trans. Co., supra; States S. S. Co.* v. *Berglann*, 41 Fed. (2d) 456), assumed the risks ordinarily incident to the employment. One of the principal issues upon which evidence was introduced in this case was whether the plaintiff was furnished a reasonably safe place to work while unloading the lumber next to the hatch coamings. The accident occurred at 9 o'clock on the morning of May 4, 1931. The hatch covers had been taken off the night before. There was undisputed evidence that the lumber, at least from a distance of about four feet from the deck, had been ''landed'' rather than stowed, that is, placed in slingloads just as it came from the dock, rather than hand-piled piece by piece with laths at stated distances to make a solid packing, and that a portion of the landed lumber toppled with the plaintiff, causing him to fall into the hold. It further appeared that a request had been made to replace the hatch covers, but that the plaintiff was ordered to work with the hatch uncovered. It was undisputed that there was no necessity for the hatch to be open, as no unloading from the hold was being done that morning. There was also evidence that it was unusual to load the deck so close to the hatch.

The question is not whether the plaintiff properly handled the slingload which he was preparing to be lifted off. That question is rather one of contributory negligence (see *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492, 503 [34 Sup.

Ct. 635, 58 L. Ed. 1062, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1]; *McMyler Mfg. Co.* v. *Mehnke,* 209 Fed. 5; *Devaney* v. *Atchison etc. R. Co.,* 219 Cal. 487 [27 Pac. (2d) 635]; *Engfors* v. *Nelson S. S. Co.,* 131 Or. 108 [280 Pac. 337]; *Barker* v. *Kansas City, M. & O. Ry. Co.,* 88 Kan. 767 [129 Pac. 1151, 43 L. R. A. (N. S.) 1121]), and is not otherwise involved in a consideration of the matter before us. The important issue was whether the plaintiff was furnished a reasonably safe place to work and whether there was evidence that the defendant was negligent in failing to provide such a reasonably safe place. The question was submitted to the jury on that basis, and we see no prejudicial error in the refusal of the court specifically to instruct the jury as to whether the plaintiff had assumed the risk. The effect of the instructions as given was to place liability on the defendant only if a reasonably safe place was not provided, and there was negligence in failing to make such provision.

 It has become well recognized, both before and since the incorporation into the Jones Act of the Federal Employers Liability Act, that the entire doctrine of assumption of risk is not applicable to seamen. The reasons underlying this policy are stated in the cases recognizing the exception. (*Lafourche Packet Co.* v. *Henderson,* 94 Fed. 871; *The Colusa,* 248 Fed. 21; *Cricket S. S. Co.* v. *Parry,* 263 Fed. 523; *Ziegler* v. *Alaska Portland Packers' Assn.,* 135 Or. 359 [296 Pac. 38]; *Lejeune* v. *General Pet. Corp.,* 128 Cal. App. 404 [18 Pac. (2d) 429]; 56 Cor. Jur. 1198 et seq.; *McGeorge* v. *Charles Nelson Co.,* 107 Cal. App. 148 [290 Pac. 75].) It is also well settled that under the federal statutes an employee does not assume the risk of the defendant's negligent failure to provide a safe place to work. (*Seaboard Air Line* v. *Horton, supra; States S. S. Co.* v. *Berglann, supra; Ziegler* v. *Alaska Portland Packers' Assn., supra; The Kongosan Maru,* 282 Fed. 666; *Engfors* v. *Nelson S. S. Co., supra.*) The rule of assumption of risk presupposes that the employer has performed the duty of caution, care and vigilance which the law casts upon him. (*Cincinnati N. O. & T. P. Ry. Co.* v. *Hall,* 243 Fed. 76, 81.) The reliance upon the statement in *The Gladiolus,* 21 Fed. 417, that leaving open a common between-deck hatchway while the vessel is lying in port is not presumptive evidence of negligence, is insufficient to require a reversal of the judgment in the present case. There

was no contention made in this case that merely leaving the hatch open constituted negligence. There is involved the additional element of the negligence of the defendant in furnishing to the plaintiff an unsafe place to work. ■ The record supplies sufficient evidence to go to the jury on that issue and to support its implied finding thereon. Upon the record presented the submission to the jury of the instructions requested would be the practical equivalent of directing a verdict for the defendant. The facts do not present such a case as, without question, entitles the defendant to the instructions on the question of assumption of risk, and the withholding of instruction on that question, if error, was not prejudicial to him. There was no failure to instruct the jury on the defendant's theory of the case. The submission of the case to the jury on the issue considered by it was as favorable as the defendant could expect under the authorities herein cited.

We have examined the other specifications of error with reference to the refusal to give certain requested instructions and to the admission and exclusion of certain evidence, and find nothing in the rulings of the trial court which would justify a reversal.

The judgment is affirmed.

Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.