[Civ. No. 8474. First Appellate District, Division Two.—September 19, 1932.]

WILLIAM B. DeLANNOY, Respondent, v. PETER GRAMMATIKOS, Appellant; GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE CORPORATION, LTD. (a Corporation), Intervener.

Hadsell, Sweet & Ingalls for Appellant.

Ingemar E. Hoberg for Respondent.

STURTEVANT, J.—Plaintiff commenced an action to recover damages for injuries sustained in an automobile collision. The owner of the automobile appeared and answered by interposing certain denials and pleading contributory negligence. The insurance carrier of the plaintiff's employer appeared and filed a complaint in intervention. The defendant answered the complaint in intervention. A trial was had before the trial court sitting with a jury. The jury returned a verdict in favor of the plaintiff and from the judgment entered thereon the defendant has appealed.

In the afternoon of the twenty-sixth day of August, 1930, the plaintiff was in the act of making a delivery of some automobile parts to a customer of his employer. He had the packages in his hand and was traveling on foot. He passed down the north side of Grove Street to the west side of Van Ness Avenue. At the crossing made by Grove and Van Ness there were at that time electric signals. A signal stood on each one of the four corners. The plaintiff testified that when he arrived at the corner he waited for the signal to say ''go''. He looked to his left and saw a car. That car, according to his testimony in different places, was 75, 100 or 175 feet away. He looked to his right and saw no cars approaching, then he entered Grove Street to cross to the south side. As he entered the street and until the impact he was looking to his right. When he got to the center of the street he saw the same car right on top of him. It was a car's length away. The plaintiff testified that he did not know what took place after that. The next thing he remembered was being in an ambulance. One of his witnesses, Mr. Paulson, testified

that on the day of the accident he was acting as the driver of a truck for a dyeing works. He had driven west on Grove and as he approached Van Ness the signal registered "stop". He stopped on the north side of Grove east of Van Ness. As he stopped there the defendant approached from behind, passed him on the left, and proceeded across Van Ness. As the defendant did so the traffic on Van Ness, moving toward the south, forced the defendant to swerve to his left and the defendant was driving in the center of Grove. About that time and when on the opposite side of Van Ness he saw the defendant's car hit the plaintiff. The plaintiff was hit by the right-hand end of the defendant's front bumper, was swung around to the right-hand side, and knocked down.

The defendant testified that he had been traveling on the north side of Grove Street in a westerly direction; that when he approached Van Ness Avenue he looked at the stop sign and it said "go"; that he was ten feet away from the signal; that he did not stop, but proceeded on his way on the right-hand side. There were no cars in front of him. As he entered the intersection he saw a man facing the north standing on the northwest corner. As soon as defendant reached the corner it seemed to him that that man kind of fell over defendant's machine. As the defendant proceeded he was looking ahead to see if anybody was in front of him. He saw the man standing on the corner the whole time he was crossing the intersection. The defendant was driving a Hupmobile of the model of 1929 and it was equipped with four-wheel brakes. As the defendant crossed the intersection no automobiles were moving north or south on Van Ness Avenue. The defendant testified that when he reached Van Ness Avenue he was traveling ten miles an hour. That up to the time of the accident he did not go faster. At the time of the impact the defendant testified that his right-hand wheels were six feet from the Grove Street curb. At the time of the accident another machine approached from the east side of Van Ness Avenue and stopped alongside of the defendant. When the plaintiff fell over the defendant's car he hit the car in about the middle. After the impact the defendant stopped his car. He testified that he stopped it within ten feet. As the defendant got out of his car the plaintiff was rising to his feet.

The plaintiff was in the pedestrian lane. He was on the right-hand side of it five or six feet from the sidewalk. As the defendant entered the intersection he did not see any cars at his side. Behind him there were some coming. The plaintiff was never in front of defendant's car but approached its side. As plaintiff stepped into the street he was looking toward the city hall (over his left shoulder).

At the time and place of the accident, as we have stated above, on each of the four corners of the intersection there had been installed and were in operation electrically operated traffic signals. Under the terms of the ordinance then in force it was provided: "It shall be unlawful for any operator of an automobile or pedestrian to disobey the instructions of any mechanical or electrical traffic signal, traffic sign or marks upon the street placed in accordance with the provisions of this ordinance. . . . The ringing of a bell in connection with any mechanical or electrical traffic signal shall indicate preparation for a change in the direction of traffic movement. When such bell is sounded no traffic shall enter the intersection until a green or go signal is shown."

It was stipulated that at the time and place of the accident the electrical devices were so geared as to allow passage of traffic 34 seconds on Van Ness and 18 seconds on Grove and that there were two bells four seconds apart which indicated preparation between "stop" and "go".

As to compliance or want of compliance with the provisions of the ordinance, it is patent that either the defendant or the plaintiff was unlawfully in the intersection at the time of the accident. As to which one was within his rights was a question for the jury. The one who had, under the law, the right of way was not entitled to disregard entirely all other matters of care for himself and for others. Hence the case presented other questions than the sole question as to compliance with the terms of the ordinance.

The defendant attacks many instructions given at the request of the plaintiff.

The court instructed the jury: "I instruct you that a person lawfully crossing a public street has the right to assume that all other persons using the street will also use ordinary care and caution. This rule allows pedestrians

to assume, until the contrary reasonably appears, that the drivers of motor vehicles will obey and abide by the traffic laws and regulations, and will use due care and vigilance to avoid inflicting injury to them.'' It is said that the instruction, as given, foreclosed the jury from deciding the question of contributory negligence. By its terms it did not necessarily do so. It refers to pedestrians "lawfully" using the streets. It will be noted that contributory negligence is not mentioned. All of the instructions are to be read together. In other instructions the subject of contributory negligence was fully and correctly covered. But, acting on request of the defendant, the court also gave an instruction: ''I instruct you that defendant had a right to assume that plaintiff would look and see vehicles along his line of vision and that he would exert ordinary care to avoid collision with them.'' In *Hoy* v. *Tornich,* 199 Cal. 545, at page 552 [250 Pac. 565, 568], addressing itself to a similar record, the court said: ''The instructions so given at defendant's request must be presumed to have removed any prejudicial effect of the instruction of which complaint is made.''

The court gave the jury an instruction: ''In determining whether or not the plaintiff was guilty of contributory negligence, I instruct you that if there is no evidence to the contrary the law presumes that the plaintiff did everything that a reasonably prudent person would have done under the circumstances for the protection of his own safety. This is a species of evidence that continues throughout the case unless the contrary appears by other competent evidence.'' The defendant asserts that witnesses having been called on each side regarding the facts of the case the presumption had disappeared. Heretofore the question has been much debated; however, at the present time, we think the question has been set at rest. (*Olsen* v. *Standard Oil Co.,* 188 Cal. 20, 25 [204 Pac. 393]; *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529].) It was not error to give the instruction.

The court instructed the jury on the doctrine of the last clear chance. It is claimed that said doctrine has no application to the facts in this case. In *Hoy* v. *Tornich, supra,* the court was discussing the same contention. It quoted with approval from *Wahlgren* v. *Market Street*

*Ry. Co.*, 132 Cal. 656, 665 [62 Pac. 308, 64 Pac. 993]: " . . . we think counsel had a right to argue to the jury that the employees were interested witnesses, and though they both testified that they did not see the plaintiff before her injury, yet, there being no obstruction to the view, the conductor must have seen her from where he was at the switch before the car passed him, if he was looking for approaching pedestrians, as his testimony would seem to imply." So in the instant case. If we assume that the defendant had the right of way, was proceeding to cross Van Ness, was looking straight ahead into the unobstructed street, and the plaintiff, while looking to his right and away from the defendant, walked out to the center of the street and that the defendant seeing the plaintiff's movements, nevertheless proceeded and knocked the plaintiff' down, then and under those circumstances it may not be said that the doctrine of the last clear chance had no application.

■ The defendant complains because the trial court instructed the jury on imminent peril. He complains that the instruction was inapplicable to the facts of this case. That contention we think is too broad. If, as he claimed, the plaintiff waited until the signal said "go" and that then he walked forward using due care and that he did not see the defendant's automobile until it was only a car's length away, then the plaintiff was in "imminent peril". Viewing the facts from that angle it was not error to give the instruction.

■ The defendant complains of the instructions given with respect to the amount of care exacted of an automobile driver as compared with the amount of care exacted of a pedestrian. The defendant argues that they might " . . . well have misled the jury into believing that this was a situation requiring a higher degree of care on the part of the defendant than otherwise. . . . Who can say but that this ambiguous instruction did not mislead the jury when considered with the other prejudicial and erroneous instructions?" We have just shown that the other instructions were neither erroneous nor prejudicial. As the defendant is appealing the burden rests on him to show that the instructions regarding care misled the jury. The burden does not rest on respondent to show that error was not committed, but the burden rests on the appellant.

■ It is contended that the court instructed with respect to matters not in issue. In that connection the defendant quotes the record that no witness testified that the defendant was proceeding more than ten miles per hour. He then calls our attention to an instruction in which the trial court stated the speed limit to be fifteen miles per hour. Conceding that the instruction is subject to the criticism, it was not prejudicial.

■ An instruction regarding the violation of the express provisions of the California Vehicle Act (Stats. 1923, p. 517, as amended) referred to an injury to a "third person". The defendant asserts that he does not know what it means. A most casual reading shows that it was an awkward expression referring to the plaintiff.

■ Several other instructions are objected to as having been "garbled" from the discussion in certain decisions. The criticism is justified. Furthermore, it may be conceded that the practice is not to be commended. However, no single one of the instructions so attacked contains prejudicial error.

■ The defendant tendered an instruction as to a "mere accident". The trial court refused to give it. It was a correct statement of the law, but the trial court was right in holding that the instant case presented no such question.

■ The defendant contends that the plaintiff was guilty of contributory negligence as a matter of law. If we accept the defendant's version of the facts that contention is sound. If we accept the plaintiff's version of the facts the contention is not sound. In this connection the defendant claims that it was the duty of the plaintiff as he crossed the street to look both ways before entering the street and thereafter to continually look in the direction from which the traffic would be approaching. When weighed under a statutory rule such as the ordinance above quoted the defendant cites us to no authority declaring his contention to be correct under all circumstances. As negligence has reference to time, place and circumstance, we are not prepared to hold the defendant's contention a sound rule of law.

The defendant asserts that the trial court erred in refusing to grant a new trial. He bases the point on the alleged errors hereinabove discussed. In view of what we have already said, the point may not be sustained.

Finally it is asserted that the verdict is excessive. The amount of the verdict rested on the testimony of medical experts. The plaintiff called as his expert Dr. Catton. The substance of his testimony was that in the accident the plaintiff suffered a concussion of the brain and that the effects of the concussion have not disappeared, but some have continued, and in his judgment that the injury is permanent. In his opinion a condition exists that is epileptic in its nature. If the jury accepted the opinion of Dr. Catton it was within its rights in bringing in the verdict that it returned into court.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 19, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 17, 1932.