[L. A. No. 17094. In Bank.—October 2, 1939.]

EDWARD WESTBERG et al., Respondents, v. STANLEY H. WILLDE et al., Appellants.

Parker & Stanbury, Harry D. Parker and Vernon W. Hunt for Appellant Willde.

Richard E. Reese for Appellant Talsky.

F. Eldred Boland and Knight, Boland & Riordan, as *Amici Curiae*, on Behalf of Appellant.

Earle M. Daniels and W. Eugene Craven for Respondents.

CURTIS, J.—From a judgment for $5,650 entered upon a jury verdict for plaintiffs for the death of their son, defendants prosecute this appeal. Plaintiffs' son, Morris E. Westberg, twenty-five years of age, received injuries from which he died when a Plymouth coupe which he was driving was struck by a Ford truck driven by defendant Stanley H. Willde and owned by defendant B. Talsky, doing business under the name of Reliable Delivery Service. The collision took place in the intersection of Twenty-third and Trinity Streets in the city of Los Angeles at 11:30 A. M. on March 12, 1937. It had been raining and the streets were wet.

The defendant Willde, driving west on Twenty-third Street, made a boulevard stop at San Pedro Street, one block east of Trinity. He then passed a dump truck on its left side and a Graham Paige touring car on its right side. The decedent was driving north on Trinity Street.

The defendant Willde placed the point of impact as just over a manhole in the center of the intersection. There was evidence for plaintiffs that the cars collided in the northeast quarter of the intersection. The truck hit the right side of the coupe toward the rear. The coupe came to rest on the west side of Trinity Street north of the intersection, with its front wheels on the sidewalk. Morris Westberg was lying beneath the car. The Ford truck spun around and stopped on the north side of Twenty-third Street, west of Trinity, facing east, the opposite direction from that in which it had been proceeding.

The defendant Willde estimated his speed at 25 to 30 miles an hour in the block east of the intersection, and at about 25 miles an hour as he entered the intersection. He

claims to have entered the intersection first. When he first saw the Plymouth coupe it was not yet in the intersection, he testified. As he observed the Plymouth he took his foot off the accelerator, put on the brake and swerved to the left. No one but Willde testified for defendants as to the facts of the accident.

The driver of the dump truck and the driver of the Graham Paige both testified for plaintiffs as eye-witnesses, as did a third witness, who was standing near the intersection. This last witness estimated the speed of the Plymouth car as 20 miles an hour, the speed of the Ford truck at 50 miles. The other two witnesses fixed the speed of both cars at 25 to 30 miles an hour. There was testimony on behalf of plaintiffs that the Plymouth entered the intersection first.

The defendants do not contend that the evidence will not support a verdict of negligence on the part of defendant Willde and freedom from contributory negligence on the part of the decedent. As grounds for reversal they claim error in instructions.

The instruction on which appellants' principal attack is made reads as follows:

"The presumption is that every man obeys the law, and the presumption in this case is that the plaintiffs' son, Morris E. Westberg, was traveling at a lawful rate of speed, and on the proper side of the highway at all times. This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until, and unless it is overcome by satisfactory evidence."

This instruction is in almost the precise words of the instruction set out in the opinion in the case of *Olsen* v. *Standard Oil Co.*, 188 Cal. 20, 25 [204 Pac. 393], which was approved by this court in the following language:

"The defendant claims that this is erroneous. We think it is correct. The rule that contributory negligence of the plaintiff must be alleged in the answer, or it will not be available to the defendant as a defense, is based on this presumption. So, also, is the rule that the burden of proving it by a preponderance of the evidence is on the defendant. The code expressly declares that this presumption is disputable, that it 'may be controverted by other *evidence*', and that unless so controverted the jury is bound to find in accordance with it. (Code Civ. Proc. secs. 1961, 1963,

subds. 1, 33.) The instruction is, therefore, strictly in accordance with the code on the subject.''

In later cases we expressly approved our decision in that case (*Rogers* v. *Interstate Transit Co.,* 212 Cal. 36 [297 Pac. 884]; *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529]; *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1. [210 Pac. 269]), and it has been followed by the District Court of Appeal in *Ramsey* v. *Pasini,* 108 Cal. App. 527, 529 [291 Pac. 884], and *DeLannoy* v. *Grammatikos,* 126 Cal. App. 79 [14 Pac. (2d) 542].

From these decisions, and others of this court which might be cited, the rule is firmly established in this state that a presumption is evidence and is sufficient to support a verdict of a jury or a finding of the court, unless overcome by satisfactory evidence. (*People* v. *Milner,* 122 Cal. 171 [54 Pac. 833]; *Sarraille* v. *Calmon,* 142 Cal. 651 [76 Pac. 497]; *People* v. *Siemsen,* 153 Cal. 387 [95 Pac. 863]; *Pabst* v. *Shearer,* 172 Cal. 239 [156 Pac. 466]; *Thompson* v. *Davis,* 172 Cal. 491. [157 Pac. 595]; *Gilmour* v. *North Pasadena Land etc. Co.,* 178 Cal. 6 [171 Pac. 1066]; *Olsen* v. *Standard Oil Co.,* 188 Cal. 20 [204 Pac. 393]; *Mar Shee* v. *Maryland Assur. Corp., supra; Pacific Portland Cement Co.* v. *Reinecke,* 30 Cal. App. 501 [158 Pac. 1041]; *Grantham* v. *Ordway,* 40 Cal. App. 758 [182 Pac. 73].)

In the case of *Mar Shee* v. *Maryland Assur. Corp., supra,* this court had before it the question as to whether the presumption in favor of one of the parties to said action had been ''overcome by satisfactory evidence''. In that case the rule was announced that ''a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.''

In the instant case the defendants do not contend that as a matter of law decedent must be held to have been guilty of contributory negligence. That is, they do not urge that the evidence is ''wholly irreconcilable'' with the presumption. It was therefore no error to give the questioned instructions under those circumstances. (*Ellison* v. *Lang Transp. Co.,* 12 Cal. (2d) 355 [84 Pac. (2d) 510].)

The further claim is made that the giving of the said instruction was improper, in view of the fact that the witnesses on behalf of respondents and those of the appellants testified fully as to the acts and conduct of the deceased at the time of and immediately prior to the collision, and therefore that there was no place for a presumption as to his conduct on that occasion. *Mundy* v. *Marshall*, 8 Cal. (2d) 294 [65 Pac. (2d) 65], is cited in support of this last mentioned contention. In that case, however, the court held that, ''There is only one reasonable conclusion to be drawn from the facts established by the testimony of the plaintiff's own witness''. That conclusion was that the deceased in that action had been guilty of contributory negligence. In other words, the court concluded that the deceased's negligence was established by ''uncontradicted testimony'' of the witnesses of the plaintiff, and the case was therefore brought within the rule of the Mar Shee case.

*Campbell* v. *City of Los Angeles*, 28 Cal. App. (2d) 490 [82 Pac. (2d) 720], is also cited in support of this last mentioned contention. In that case the statement of facts is quite brief and so far as appears from the opinion the instruction was not qualified as in the instant case. (See, *Ellison* v. *Lang Transp. Co.*, 12 Cal. (2d) 355, 359 [84 Pac. (2d) 510].) It cites the recent case of *Engstrom* v. *Auburn Auto Sales Corp.*, 11. Cal. (2d) 64 [77 Pac. (2d) 1059], which followed the Mar Shee and Smellie cases. In so far as the decision in the Campbell case is inconsistent herewith it is disapproved. There is language in the cases of *Lindley* v. *Southern Pac. Co.*, 18 Cal. App. (2d) 550, 556 [64 Pac. (2d) 490], and *Varner* v. *Skov*, 20 Cal. App. (2d) 232 [67 Pac. (2d) 123], cited in the Campbell case, which is perhaps only *dicta*, but which is apparently in conflict with the rule announced in the Mar Shee case and the decisions of this court following the last named case, and which, in so far as it departs from such rule, is not approved.

The Campbell case also cites the case of *Paulsen* v. *McDuffie*, 4 Cal. (2d) 111 [47 Pac. (2d) 709], in which the acts and conduct of plaintiff were shown not only by his witnesses but by his own testimony, and we raised the question whether a presumption as to his acts and conduct had any place in such case. We did not hold that the giving of the instruction given in that case which is similar to the one given in the Campbell case was prejudicial error, but

left the entire question open, as the contributory negligence of the plaintiff in that action, brought under the Jones Act (46 U. S. C. A., sec. 688), was not a defense to plaintiff's cause of action based upon the defendant's negligence. We therefore held that the giving of said instruction "worked no serious prejudice to the defendant".

We think it well to state here that in our opinion there is a substantial difference in the situation before a court where the question of the plaintiff's negligence is in issue, and both plaintiff and his witnesses testified to all his acts and conduct at the time of his alleged negligence, from a situation where the acts and conduct of a decedent are the issues before the court. In the first instance, all possible facts both in favor of and against the alleged negligence of the plaintiff are before the court, and it is difficult for us to perceive how any presumption as to his conduct can add to or detract from this evidence. Surely if this evidence conclusively supports the claim that he was negligent, then, according to our decisions cited above, the presumption as to his conduct has been dispelled. On the other hand, if the plaintiff has testified respecting his acts and conduct, and his testimony and that of his witnesses showed that he used ordinary care for his safety, an instruction to that effect would not be of any assistance to him; but if such evidence did not clearly and unmistakably clear him of the charge of negligence, then an instruction which would place his testimony in a more favorable light than it would be without such instruction would seem to be uncalled for, if not improper. In such case the giving of any instruction as to the presumption of plaintiff's conduct would seem to be of doubtful propriety. It has, however, been held that the giving of such an instruction under the circumstances just related was not prejudicial. (*Tuttle* v. *Crawford*, 8 Cal. (2d) 126 [63 Pac. (2d) 1128]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36, 38, 39 [297 Pac. 884].) But in the other situation, where the acts and conduct of a deceased person are the subject of inquiry, and the testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, unless such testimony meets the requirement of the rule in the Mar Shee case, and other cases decided by this court following the Mar Shee case, an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is not only proper but this

court in an unbroken line of decisions, has sustained the giving of such an instruction. (*Ellison* v. *Lang Transp. Co.,* *supra.*)

In answer to the brief of *amicus curiae* in which the contention is made that the rule as sanctioned by this court in its decision in the Mar Shee, the Smellie, and kindred cases, is out of line with the decisions of the United States Supreme Court and particularly with the decision in *Mobile, J. & K. C. R. R.* v. *Turnipseed,* 219 U. S. 35 [31 Sup. Ct. 136, 55 L. Ed. 78, Ann. Cas 1912A, 463, 32 L. R. A. (N. S.) 226], we need only refer to our decision in the Smellie case, at pages 553 and 554, where the Henderson case (*Western & A. R. R.* v. *Henderson,* 279 U. S. 639 [73 L. Ed. 884, 49 Sup. Ct. 445]), is discussed with our conclusion that "the laws of this state have never gone to the extent denounced by the Supreme Court in the Henderson case", and the point here raised is decided adversely to the *amicus curiae's* present contention.

Our conclusion therefore is that the giving of the criticized instruction, being instruction No. 17, was proper and that it was not an error on the part of the trial court to so instruct the jury.

It is next contended that instructions No. 14 and No. 18 are formula instructions and that they and each of them omitted the element of proximate cause. These instructions are not unlike an instruction considered by us in the case of *Douglas* v. *Southern Pac. Co.,* 203 Cal. 390 [264 Pac. 237], in which it was held that the instruction there under review was not a formula instruction, the court stating (p. 394), "In our opinion the instruction constitutes nothing more than an expression of the doctrine of *respondeat superior*".

Instruction No. 38 was not erroneous in that it ignored the defense of appellant Talsky that appellant Willde was not acting as the former's agent at the time of the collision. It purported specifically to instruct the jury upon the question of negligence both of appellant Willde and of the decedent. No attempt was made in this instruction to instruct the jury upon the question of agency, which latter question was covered by other instructions.

A similar answer may be made with reference to instructions 15, 22, and 23, general instructions by which the jury was told that it is the duty of a driver to keep his au-

tomobile always under control and to use reasonable care. Appellants contend that the effect of these instructions by omitting any reference to the duty of the decedent to exercise ordinary care was to authorize the jury to find for plaintiffs regardless of how negligent the decedent may have been. The instructions as given were not applicable only to Willde, since they applied to the "driver of an automobile". The question of the decedent's contributory negligence was fully covered by other instructions.

 However, we are of the view that the court committed prejudicial error in its instructions as to the law regulating the speed of automobiles. The court instructed the jury in the language of section 510, Vehicle Code, that "no person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property". The court then read to the jury section 511 of the Vehicle Code, *verbatim*. This section fixes *"prima facie"* speed limits. It includes the following provision: "The speed of any vehicle upon a highway in excess of any of the limits specified in this section is *prima facie* unlawful unless the defendant establishes by competent evidence that any said speed in excess of said limits did not constitute a violation of the basic rule declared in section 510 hereof at the time, place and under the conditions then existing."

The court gave the further instruction: "You are instructed that by Section 513 of the Vehicle Code of the State of California, in force at the time of the collision, it is provided: 'In any civil action proof of speed in excess of any *prima facie* limit declared in Section 511 hereof at a particular time and place shall not establish negligence as a matter of law but in all such actions it shall be necessary to establish as a fact that the operation of a vehicle at such excess speed constituted negligence.' "

In *Akers* v. *Cowan,* 26 Cal. App. (2d) 694 [80 Pac. (2d) 143], and *Anderson* v. *Mothershead,* 19 Cal. App. (2d) 97 [64 Pac. (2d) 995], it is held that section 513 declares the rule as to burden of proof in civil cases, and that the above-quoted paragraph of section 511 is applicable only to criminal actions.

In *Akers* v. *Cowan, supra,* the District Court of Appeal reversed the judgment for plaintiff for instructions similar to

those given in the instant case. There, as in the instant case, the court read both sections 511 and 513 to the jury. The court held that the effect of reading both provisions to the jury was to give conflicting instructions. The court said:

"In connection with the *prima facie* speed limits thus given to the jury the above instruction included the second paragraph of Section 511 of the Vehicle Code, which sets forth the rule applicable in criminal actions where a defendant is charged with traveling on a highway at a rate of speed higher than the *prima facie* limits set forth in that section. In such a case the burden is placed upon the defendant of proving that any speed in excess of these limits did not constitute a violation of the basic rule set forth in Section 510. A contrary rule prevails in civil actions, which rule is set forth in Section 513 of this code. The question of speed was here material and important and the giving to the jury of this wrong instruction with reference to the burden of proof in connection with that issue was plainly erroneous. (*Anderson* v. *Mothershead,* 19 Cal. App. (2d) 97 [64 Pac. (2d) 995].)

. . . . . . . . . . . . . .

"Since Section 513 was also read, the jury was given two conflicting instructions relating to the burden of proof in this connection, the first of which, although clearly erroneous, was particularly tied in with and directly related to two of the *prima facie* limits of speed referred to in the same section of the code. It has been frequently held that the giving of an erroneous instruction is not cured by the giving of other correct instructions, where the effect is simply to produce a clear conflict in the instructions and it is not possible to know which instruction was followed by the jury in arriving at a verdict. (Citing cases.)

. . . . . . . . . . . . .

"The evidence in this case is not only sharply conflicting, but is so nearly evenly balanced that it would seem from the written record that the matter of upon which side lay this burden of proof may well have been determinative upon the question of appellant's negligence as presented to the jury. The appellant was entitled to have that matter clearly and correctly presented by the instructions. The first instruction on that subject contained matter which was not only erroneous but which had no place in any civil action and,

under the circumstances here appearing, the giving of the same must be held to have been prejudicial.''

In *Akers* v. *Cowan, supra,* the court held that a further instruction tended to confuse, rather than to clarify the matter. But the language quoted above is applicable in the absence of a further instruction. The rule is thoroughly settled that where conflicting instructions are given the verdict of the jury cannot be sustained. Adherence to this rule impels a reversal of the judgment for respondents.

Appellants cite *O'Meara* v. *Haiden*, 204 Cal. 354, 355 [268 Pac. 334, 60 A. L. R. 1381], in support of their contention that it was error to introduce a photograph of the deceased in cap and gown taken upon his graduation with the B. A. degree from the University of Southern California, in that the effect was to arouse the sympathies of the jury. In the cited case, we disapproved the admission of the photograph, but did not find it ground for reversal. Mr. Justice Seawell in a concurring opinion declared that the photograph would give a truer conception of the youth's physical appearance than could be conveyed by testimony, and would also reflect something of his mental force, which matters were pertinent in determining damages. In our view, considering the facts of the instant case, it may well be questioned whether the admission of the photograph constituted error. Surely it was not reversible error.

In the present case, the verdict for $5,650 damages plainly is not excessive. The youth was a second year law student at the University of Southern California, and gave every promise not only of being a comfort and satisfaction to his parents, but also of being able to render them substantial assistance in a pecuniary way should they require such assistance in their future years.

The defendant Talsky further contends that the court erred in refusing to direct a verdict for him on the ground that Willde was not acting in the scope of his employment when the accident took place. The facts that Willde was an employee of Talsky and driving a car owned by him, give rise to an inference that Willde was acting in the scope of his employment. (*Pozzobon* v. *O'Donnell*, 1 Cal. App. (2d) 151 [36 Pac. (2d) 236]; *Kruse* v. *White Bros.*, 81 Cal. App. 86 [253 Pac. 178]; *Maupin* v. *Solomon*, 41 Cal. App. 323 [183 Pac. 198].) This inference was not dispelled as a matter of law by the evidence.

Talsky conducted a package delivery service under the name Reliable Delivery Service. Willde left his employer's place of business at 8:30 in the morning in a Ford truck of his employer. After finishing deliveries and also picking up packages, as directed by his employer, he went to his home on East 24th Street for lunch. The collision occurred while he was on his way back to his employer's office, with the packages in the truck which he had collected at his employer's direction to be returned to his office. Willde testified that he planned to stop at the California Hospital, where his father was employed, to give him a letter telling of the serious illness of the father's mother. The hospital lies between Willde's home and his employer's office, but several blocks to the west of the most direct route to the office, which is by way of Griffith Street. The collision took place before he reached the hospital, at Trinity Street, which is the third street west of Griffith. Both defendants testified that Talsky had forbidden Willde to use the truck for purposes other than the employer's business. It may be doubted whether such a slight deviation would be within the spirit of this general prohibition. However this may be, the jury was not bound to accept Willde's testimony as to this personal errand. At the trial he testified that he wished to give his father a letter. Plaintiff Edward Westberg stated at the trial that at the coroner's inquest Willde told him he was going to get money from his father to pay a telephone bill. The jury may have discredited his testimony that he was on a personal errand. (*Market Street Ry. Co.* v. *George,* 116 Cal. App. 572 [3 Pac. (2d) 41]. See note, 8 A. L. R. 796, 820.) His testimony as to the facts of the accident varied from that of plaintiffs' witness. By returning the verdict for plaintiffs, the jury impliedly rejected his version of the accident.

Furthermore, giving full credence to Willde's testimony as to his personal errand, it cannot be held as a matter of law that Talsky is not liable. The rule is stated in *Kruse* v. *White Bros.,* 81 Cal. App. 86, 92 [253 Pac. 178], as follows:

"A mere deviation from the strict course of his duty does not release the master from liability. In order to have that effect it must be so substantial as to amount to an entire departure. (39 Cor. Jur. p. 1297, Master and Servant, sec. 1493.) As the rule has been stated, 'One does not

cease to be acting within the course of the master's employment because his most direct and immediate pursuit of the master's business is subject to necessary, usual or incidental personal acts, nor even by slight and immaterial delays or deflections from the most direct route for a personal or private purpose, the pursuit of the master's business continuing to be the controlling purpose. Such acts, not amounting to a turning aside completely from the master's business so as to be inconsistent with its pursuit, are often only what might be reasonably expected, to which, therefore, the master's assent may be fairly assumed; or they are in many instances the mingling with the pursuit of the master's business some purpose of the servant's own.' (Shearman & Redfield on Negligence, 6th Ed., p. 362, sec. 147a.)

"Whether there has been a deviation so material or substantial as to constitute a complete departure is usually a question of fact. In some cases the deviation may be so marked, and in others so slight relatively, that the court can say that no conclusion other than that the act was or was not a departure could reasonably be supported; while in still others the deviation may be so uncertain in extent and degree in view of the facts and circumstances as to make the question of what inferences should be drawn from the evidence properly one for the jury . . . "

In the above case an employee intending to call on a customer had driven beyond the point where he could have turned to reach the customer's home in order to take a friend to her home. The accident took place before he reached the friend's home. A judgment for plaintiffs against the employer was affirmed.

In *Dennis* v. *Miller Automobile Co.*, 73 Cal. App. 293 [238 Pac. 739], it was the duty of the employee to transport packages from his employer's garage to an express company. His usual and direct course was west and north. To accommodate two other employees who were going home to lunch he drove south several blocks and the accident occurred before he reached their residences. A judgment against the employer was affirmed. The court said: "We think the facts in this case bring it well within the principle applied to departures, incidental departures, and incidental services had or performed in connection with the main duties and obligations being performed by the employee, and did

not constitute an abandonment for the time being of the employer's service. There is presented no element of a junketing trip, or pleasure trip, nothing further than going to the express office by a different route.''

In the recent case of *Cain* v. *Marquez*, 31 Cal. App. (2d) 430 [88 Pac. (2d) 200], reviewing numerous authorities, the court declares the rule to be: ''A deviation from the strict course of duty does not necessarily take him (the employee) out of the scope of employment if meanwhile his main purpose is still to carry on the business of his master.''

The court did not err in the present case in refusing to direct a verdict for Talsky.

Error of the court in instructing the jury that a presumption arose that the employee was acting in the scope of his employment from the fact that he was operating his employer's automobile, can be corrected upon a retrial. An inference, rather than a presumption arises in such event. (*Pozzobon* v. *O'Donnell, supra; Maupin* v. *Solomon, supra; Engstrom* v. *Auburn Auto Sales Corp.*, 11 Cal. (2d) 64, 69 [77 Pac. (2d) 1059].)

We have heretofore held that the court committed prejudicial error in its instructions as to the law regulating speed.

The judgment is reversed.

Shenk, J., York, J., *pro tem.*, and Houser, J., concurred.

EDMONDS, J., Concurring.—I concur in the judgment because I am in accord with the holding of my associates that the instructions relating to the allowable speed of automobiles under stated conditions were prejudicially erroneous. However, I do not agree with their conclusions concerning the instruction relating to the presumption of due care.