[Civ. No. 18211.   Second Dist., Div. Three.   Aug. 31, 1951.]

EMMA PARCHER et al., Respondents, v. CITY OF LOS
ANGELES, Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, Joseph N. Owen and W. L. Weber, Deputy City Attorneys, for Appellant.

Hector P. Baida and J. Leroy Irwin for Respondents.

SHINN, P. J.—From a judgment on verdict of $10,000 for plaintiffs in a wrongful death action, defendant city appeals. Plaintiffs are the heirs at law of Ray L. Parcher who was swept from a bridge and drowned by storm waters. The suit is founded on Government Code, section 53051, on the theory that a storm drain under a highway was inadequate and created a known dangerous and defective condition.

The bridge is part of Sawtelle Boulevard in the city of Los Angeles, about one-half mile north of its intersection with Venice Boulevard. The storm drain runs south, along the east side of Sawtelle Boulevard, and then turns directly west to pass under the boulevard. In times of heavy rain the water overflows the drain and runs across Sawtelle Boulevard. At times this overflow covers the bridge and the roadway for some distance north of the bridge, and to a depth of 12 or 14 inches. At the drain crossing there is no sidewalk and little pedestrian traffic.

About 9:30 p. m. on the night of December 26, 1946, Ray Parcher and his son Wayne, who was driving, were traveling north on Sawtelle Boulevard. It was raining and storm water was overflowing across the bridge and the roadway north of the bridge. Two friends of the Parchers, Mr. Byers and Mr.

Wier, were following in their own car. The Parcher car was having mechanical difficulties and was pushed from time to time by the other car. As they approached the drain the roar of the waters could be heard. Ray Parcher, who was not familiar with the conditions, stopped his car, got out, and walked over to the bridge barefooted. He walked near the center of the roadway several feet from the guardrails and apparently was washed off the bridge by the force of the overflow water. While his father was walking out on the bridge Wayne Parcher went back to explain the delay to their friends. After his father disappeared, Wayne walked out onto the bridge. He felt the force of the current around his feet; he was barefooted, the surface of the bridge was slippery, and he held onto the guardrail.

Over a period of years other accidents of a similar nature had occurred at the bridge due to the rush of storm waters. Without denying that the inadequacy of the drain created a dangerous condition, the city contends that deceased was contributorily negligent as a matter of law in walking onto the bridge and he voluntarily assumed the risk which inspection of the conditions involved. Defendant urged these grounds upon motions for nonsuit, directed verdict and judgment notwithstanding the verdict. On appeal, defendant makes the same contentions, and in addition complains of an instruction given as to the presumption of due care on the part of the decedent, and one as to oral admissions.

The only testimony as to Ray Parcher's conduct was given by his son Wayne and a Mr. Coe who lived 75 feet south of the bridge and witnessed the accident. Coe's testimony was only that he saw Parcher walk out on the bridge about 4 feet from the westerly guardrail, slip or fall and go over the side into the storm drain. At the trial Wayne testified his father did not say anything to him about what he was going to do; that he, Wayne, got out of the car and walked back and knew nothing of what was happening to his father until he heard a scream, looked at the bridge and saw his father washed off of it. In a deposition Wayne said he did discuss with his father whether or not it was safe to cross, and that his father said he was going to see how bad it was, and that he then saw his father walk onto the bridge and also saw him washed off the bridge.

The city argues that the dangerous condition of the highway at the bridge was not a proximate cause of the accident; that the act of the deceased in going onto the bridge

was "an unrelated and efficient" cause, and the dangerous condition but a remote cause. The contention is untenable.

█ It is then argued that deceased, with knowledge of the dangerous condition, walked onto the bridge and assumed the risk involved, and, if there was not a voluntary assumption of risk, there was, at least, in his actions, no semblance of the exercise of ordinary care. The argument would have had more force if Ray Parcher had directed his son to drive across the bridge without having attempted to ascertain the depth and force of the water that was passing over it. But the very reason for the inspection was that he did not know whether it would be safe to attempt a crossing. Prudence dictated that he should either turn back or endeavor to learn whether it was safe to go ahead. The fact that he chose the latter course is not decisive of the question of assumption of risk or of contributory negligence. He proceeded on foot because that was the logical method for making an inspection.

There was obvious danger, of course, but the night was dark, the conditions were new to him and the depth of the water was unknown. The jury could have so concluded, and having done so would have come to the question whether the deceased exercised ordinary care in view of the danger that was, or should have been, known to him. The fact that he lost his footing did not prove negligence in the manner in which he was proceeding. The surface was slippery, debris was being washed across the bridge and the current was swift, but the immediate cause of Mr. Parcher's fall was unknown. These conditions are not of such common occurrence as to require a court or jury to conclude either that the extent of the danger they presented to Mr. Parcher should have been known to him or that his attempted inspection, if conducted with caution, was of itself a failure to exercise ordinary care. In these respects the facts differ materially from those of the cases upon which appellant relies. Without further discussion we hold the evidence to be sufficient to support the factual findings as to liability that are implicit in the verdict. (See *Anthony* v. *Hobbie*, 25 Cal.2d 814 [155 P.2d 826].)

█ The court did not commit reversible error in giving an instruction, reading as follows: "Ray L. Parcher, now deceased, under our law, is presumed to have exercised ordinary care for his own safety at the time of and immediately preceding the accident wherein he lost his life. This presumption is a form of *prima facie* evidence and will support findings in accordance therewith in the absence of a pre-

ponderance of the evidence to the contrary. It is your duty to weigh any evidence that conflicts with such presumption against the presumption itself and any evidence that may support the presumption, to determine which, if either preponderates.''

The giving of this instruction illustrates the error of using abstract instructions without shaping them to the facts of the case when required in the interest of accuracy and clarity. There were two phases of Mr. Parcher's conduct. The first was his leaving the car and undertaking to go onto the bridge to make an investigation. The evidence as to this action was explicit. Nothing was left to inference. No presumption existed that this phase of his conduct evidenced the exercise of ordinary care. Conceivably, the jury could have determined that it did not. ▮ As stated in *Ford* v. *Chesley Transportation Co.*, 101 Cal.App.2d 548, 553 [225 P.2d 997] : ''The presumption has no place in the determination of the question, whether certain acts or omissions, believed by the jury to constitute the conduct of a party, were or were not negligent.'' The instruction was susceptible of too broad an application. It should have been restricted to that phase of the conduct of the deceased as to which there was no evidence, or at least, only fragmentary evidence. This had to do with the manner in which Mr. Parcher proceeded through the water, the manner in which he exercised his faculties of observation and the care he took to maintain his footing and to avoid an accident. That was the crucial question of fact as to which there was and scarcely could have been definite or satisfactory evidence. In vital particulars the precise precautions taken by Mr. Parcher were beyond the scope of the evidence. As to these the presumption had application. (*Westberg* v. *Willde*, 14 Cal.2d 360, 367 [94 P.2d 590].) An instruction on the presumption should have been given, not in the form in which it was given, but in such form as to clearly specify the conduct of the deceased to which it applied and that to which it did not apply. ▮ The failure to do this was not, in our opinion, reversible error. From a consideration of the entire evidence we have little doubt that the result would have been the same had the instruction been in proper form. Moreover, defendant had an opportunity to offer a better instruction on the presumption of due care and did not do so.

▮ There was, in our opinion, no error in giving an instruction that oral admissions of a party should be viewed

with caution. There was some evidence to which it may have been applied.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied September 18, 1951, and appellant's petition for a hearing by the Supreme Court was denied October 29, 1951. Shenk, J., Edmonds, J., and Traynor, J., voted for a hearing.